## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

FILED

APR 4 – 2005

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Criminal No. 1:03CR50(Keeley) |
| MICHAEL J. KELLY SR., | |
| Defendant. | |

### UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

### I. INTRODUCTION

On or about March 30, 2005, defendant filed his sentencing memorandum. According to defendant, a sentence of probation with a condition that substitutes home detention for imprisonment is an appropriate sentence. As demonstrated by the prior sentencing memoranda filed by the United States, an appropriate and just sentence for defendant's crimes is a term of imprisonment as recommended by the advisory United States Sentencing Guidelines, specifically a term of imprisonment within the Guideline range of 63-78 months.

### II. ANALYSIS

In his sentencing memorandum, defendant discusses the factors set forth in Title 18 U.S.C. §3553(a). However, despite defendant's self-serving interpretation of those factors, an objective analysis of this case and 18 U.S.C. §3553(a) supports the advisory Guideline range.

1

### A. The Need to Reflect The Seriousness of the Offense, To Promote Respect For The Law and To Provide Just Punishment

In his memorandum, defendant minimizes his convictions for Counts 95-97 arguing that his offenses are *malum prohibitum* (as opposed to *malum in se*). In other words, according to defendant, because the crimes he committed are not inherently evil or immoral, he should receive a substantial departure and be rewarded with a sentence of probation. Initially, the United States asserts that both the statutory law and the Guidelines recognize the difference between offenses (*malum prohibitum* versus *malum in se*) and punish different crimes with different sentences. For instance, the statutory penalty and Guideline range for offenses against persons (homicide, kidnapping, etc.) are substantially greater than those for economic offenses or even firearms offenses. Accordingly, both the statutory sentences and the Guideline ranges already address the qualitative nature of the offenses and defendant's further minimization of his crimes is without merit.

In fact, defendant conveniently ignores that in Counts 95 and 96 his actions resulted in a prohibited person (Douglas Curry) illegally receiving firearms. Moreover, defendant also ignores the evidence which established that defendant sent two other firearms to Curry which were not recorded in defendant's business records (bound book). To argue that his trafficking in firearms to a prohibited person was a minor offense is simply illogical. Not only is the offense serious, but is indicative of defendant's lack of respect for the law.

Defendant, again, minimizes his illegal possession of machineguns (Counts 98-99) arguing that "although the offense[s] [are] felon[ies] [they are] of a less serious nature." Congress specifically mandated a ten year maximum term of imprisonment for such a crime. The Guidelines specifically provide for a higher base level for such an offense. Thus, defendant's argument ignores the reality

that the legislature and Sentencing Commission do not consider such a crime "less serious." The only support defendant offers for his position that his crimes are "less serious" and subject to probation is his own minimalist view of firearms offenses.

With respect to Count 205, defendant argues that because the law prohibiting the possession of semiautomatic weapons was ultimately repealed after his convictions, his crimes were obviously "less serious." Of course, at the time of his actions the law was in effect and defendant does not argue otherwise. More critically, defendant fails to note that in committing his crime of illegally possessing the banned semiautomatic rifles (Count 205), he used his books to illegally "launder" the weapons. He abused his position as an FFL to corruptly and falsely obtain at least one of the weapons and then further abused his position to unlawfully maintain possession of the firearms. Even at trial, defendant continued to falsely claim that he possessed the FAL under the so-called "law enforcement purposes" exception and claimed that he sold the Maadi to another individual.[1]

One very important point the defendant refuses to recognize is that the jury found, with respect to his testimony concerning the Maadi, that defendant committed perjury. The only comment in his memorandum regarding his perjurious testimony is that "defendant disputes" such an adjustment. The fact that he disputes such a finding is not surprising, but defendant's concept of what the jury's finding means or whether defendant agrees with the jury (which he obviously does not) is irrelevant.

As an aside, despite Count 205 and the two weapons underlying that conviction, defendant's

---

[1] With respect to the Maadi, defendant falsely noted in his bound book that he sold the weapon to Frank Zuleski. At trial the stipulated testimony of Zuleski revealed that Zuleski never bought or took possession of the Maadi, and that the 4473 form reflecting the sale was false.

3

Guideline range and maximum statutory punishment would not change without Count 205. Even under the conservative approach adopted by the probation officer, defendant's Guideline level (Level 24) would remain the same (base level 18, plus 2 (abuse of position), plus 2 (obstruction), plus 2 (3-7 weapons) equals 24.)[2]

B.     The Need to Afford Adequate Deterrence

Defendant claims that probation would provide adequate deterrence since he would be a convicted felon and could not obtain a federal firearms license, and thus could not manufacture firearms. Based upon defendant's previously demonstrated lack of respect for the law, such a claim of specific deterrence rings somewhat hollow.

Of course, defendant fails to address the lack of general deterrence if the Court simply imposed a sentence of probation. If other corrupt FFL's (like defendant) know that they can ignore the law and traffic in weapons, use their books to launder and possess illegal weapons and, at trial, perjure themselves only to receive probation, what deterrent effect would such a result have? The answer is self-apparent.

C.     Other Factors of Title 18 U.S.C. §3553

The defendant cites to his background as a further basis for the proposition that he presents no danger to the public for future crimes. He also references his and his spouse's medical conditions as a reason to avoid punishment.

As to defendant's danger to the public, one can only point to defendant's demonstrated lack

---

[2] As noted in the United States' prior memoranda, defendant's actual Guideline level should be level 26 which again is not affected by or dependant upon Count 205 and the two firearms underlying that conviction.

4

of respect for the law as to whether he may engage in future acts of illegality. Despite defendant's circular logic (because he is a felon he could not legally possess firearms and, therefore, could not commit further offenses), his past actions speak louder than his self-serving claims that he poses no risk to the public.

Defendant also cites to his military record, work record, and he and his spouse's various medical problems as justifications for probation. The short answer is that if anyone should have had respect for the laws of the United States, it should have been defendant. Despite his prior military service and background, somewhere along the way, defendant made the conscious choice to disregard the law in committing his crimes (and more importantly in committing perjury while testifying at trial).

Finally, without minimizing his medical condition and/or his spouse's, the simple truth is that imprisonment does not present a life threatening condition for either. Rather, both he and his wife can continue to receive medical treatment. Although, defendant may lose his health insurance, there is no indication that his spouse's employment does not offer health insurance or that she could not obtain health insurance or coverage elsewhere. Although, imprisonment may, and probably will, cause a financial hardship, such a factor does not outweigh the other factors listed above which support a sentence of imprisonment in conformity with the advisory Guideline range.

## III. CONCLUSION

For all of the above reasons, the United States respectfully requests the Court to impose a period of incarceration within the advisory Guideline range of 63-78 months. Contrary to the arguments of defendant, such a term of imprisonment is supported by and serves the purposes of sentencing as set forth in Title18 U.S.C. §3553(a).

Respectfully submitted,

Thomas E. Johnston
United States Attorney

By: Randolph J. Bernard
Assistant United States Attorney